-N/S

PRE-PAID

**FILED**
CLERK, U.S. DISTRICT COURT
01/24/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: _____DVE_____ DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| **Felipe Nery Gomez** | **Case No:** 2:22-cv-00576-AB-(PLAx) |
|---|---|
| v.<br><br>**Charles Schwab & Co. Inc.**<br>**Garrett Wynne**<br>**Vincent Trace Schmeltz** | **18 USC 1961 et seq.**<br>**(RICO-Mail Fraud/Theft, Civil Conspiracy)**<br><br>**760 ILCS 20/ Illinois UTMA**<br><br><br><br>**Ad Danum: $1,250,000+** |

**COMPLAINT**

NOW COMES FELIPE GOMEZ, in Equity and at Law, acting as private attorney general under *inter alia* 18 USC 1961 et seq., and 760 ILCS 20/ et seq., and files this Complaint grieving as to Defendants, and Petitions the Court for a FINDING and declaring that defendants and others named herein individually and collectively engaged in conduct, in concert or cooperation with others, for personal and mutual financial gain, directed at and intentionally interfering with Plaintiff's legal contracts and Custodial legal duties, as well as those of other of Arthur's attorneys, including direct interference Plaintiff's Custodial and former legal representation of his beneficiary and former legal client Arthur, that violated, *inter alia*, state and federal law, on more than one occasion, and MOVES the Court **for an INJUNCTION requiring** Defendants to cease and desist violating and interfering with, and **to disgorge**, *inter alia*, mailings and

communications to Charles Schwab related to Plaintiff from 2011 to date, and all information that should have been sent directly to undersigned by Charles Schwab, and stating in support:

### I. PARTIES

1. **Plaintiff Felipe Gomez** was and is at all times relevant hereto, an Illinois resident, whom was appointed, and agreed with Testator Sandra Gomez to be Illinois Custodian of a Schwab UTMA (xxxx7542) and a Schwab IRA (xxxx4115), for the benefit of then and at all times Illinois resident Arthur Gomez, and remains in that capacity as to any and all continuing duty that lays on former Custodial to complete the collection of Arthur's assets and investigate claims Arthur's Custodial Estate might have for Waste and other offences to the Res occasioned prior to reaching the age of termination, 21 in Illinois, and sues in the alternative or collectively thereunder as may apply, as well as in his personal capacity for redress of the lies and malfeasance directed at Plaintiff by Defendants here.

2. **Defendants Schwab, and its Attorneys Garrett Wynne and Vincent Trace Schmeltz**, allegedly, *inter alia*, and at issue here, in concert with others, diverted or participated in the diversion of undesigned's and Arthur Gomez's mails starting in 2011 and continuing to late 2020 or early 2021, and also did and continue to endeavor to cover up that malfeasance, to date, including the filing of false lawsuits, including *Schwab v Gomez,19cv3833 (NDILL)*.

## II. **FACTS**

3. On or about 1.02.09, Custodian Dr. Sandra W. Gomez, M.D., designated undersigned Felipe Gomez as the Successor Custodian to Schwab IRA xxx-4115, and Schwab UTMA xxx-7542, for the benefit of Arthur Gomez, his son, and on 7.14.11, Custodian Felipe Gomez duly notified Schwab of the passing of Dr. Gomez in relation to inherited IRA xxx-4115 and UTMA xxxx-7542.

4. *As a matter of formality and common practice, the Sandra W. Gomez Living* Trust had designated itself as Contingent Beneficiary to Arthur Gomez for the IRA xxxx-4115, which contingency was extinguished as of 7.4.11 upon Dr. Gomez's passing while Arthur survived her, with right of survivorship passing to Arthur's designated heirs.

5. From 2011 to late 2020, Schwab mailed confidential information and monthly statements, addressed to the "Custodian" for both accounts to 1645 Sonata Lane, San Marcos, CA., which, were admittedly collected from that mailbox by Larry Weisenthal, in knowing or constructive concert with Defendant and spouse/Trustee Connie Weisenthal, with or without the direction or knowledge or of The SWG Living Trust Attorneys, despite Schwab having first hand personal knowledge that Plaintiff was Custodian as of 7.4.11, despite the Sonata Lane property being sold in 2014 as attorney for The Sandra W. Gomez Living Trust (which subsequent occupants are alleged on information and belief to be possibly accepting the mail for, at the direction of, or in cooperation with Defendants Schwab and Wynne, as well as King and/or, Trustee A. Anthony Gomez, and despite Schwab filing 19cv3833, and the Trustee and the Trust attorneys having been requested to cease and desist from accepting such mails

1 and to cease and desist from allowing it to continue unabated, such occurring
2 until late 2020.

6. On or about 2019, RICO co-conspirator William King expressed to Arthur, by way of attempted extortion, and then to undersigned, Arthur's Settlement Counsel Prihoda (in related 19cv0827 and 19cv3833, N.D. Ill), and the California Bar, his mis-belief that his client, The Sandra W. Gomez Living Trust, still stood to benefit in the event that Arthur had passed away or abandoned the Schwab IRA xxxx-4115, which is alleged to be the financial motive for the conduct alleged herein, which view on information and belief was shared by the Defendants.

7. In 2020, Plaintiff finally managed to correct the incorrect address used and on 3.4.20 Her Honor Chief Judge Pallmeyer, in *Schwab v Gomez, 19cv0827, N.D. Illinois*, declared the assets to belong to Arthur (with no findings as to Plaintiff other than Plaintiff agreed with Her Honor that the account belonged to Arthur, and that undersigned never claimed otherwise).

8. In the interim, Plaintiff was unable to access the account or be informed as to its status, was unable to calculate or payout the yearly RMD for xxxx-4115, and was unable to protect the Res from**, inter alia**, any tax consequences and penalties that may have or could accrue due to the RMD failures.

9. Plaintiff's and Arthur's Counsel, Virginia Prihoda, was also lied to by Defendant Wynne, whom, on information and belief in concert with Defendant Schmeltz, contrived to inform that Schwab had no assets of Arthurs, when it still had the IRA, and Defendant Schmeltz has continued that deception, and the deflection that was 19cv3833, which falsely claims Plaintiff was trying to claim and account

1   that was unknown to and being hidden from Plaintiff.

10. In the interim, Plaintiff also has incurred over $250,000 in unpaid professional and attorney fees (not counting Plaintiff's own), and was forced to not prosecute other paying cases, due to Defendants' and others intentional use of the mails to propagate business for themselves, and the Courts to try to cover it up, continuing to date.

11. Specifically, Plaintiff previously alleged tat Defendant Schwab mailed, with the first and second set of trustees collecting, all or a portion of the at least 192 monthly confidential statement mailings, without authority, and on information and belief, Wynne and then Schmeltz either personally directed Schwab, or allowed Schwab, to continue the mailings and/or the residents of 1645 Sonata to continue to accept same, and/or submitted a series of forwardings, and.or otherwise arranged or helped arrange the diversion, and in any event Defendants and the Trustees have personal knowledge as to why, *inter alia*, Schwab sent at least 192 mailings for nearly a decade to a deceased "custodian" at a bad address, of which Defendants are alleged to have an active part in, including actively lying to Plaintiff and his agents.

12. Specifically, earlier this month, Cooperator Larry Weisenthal admitted to collecting Arthur's mails from at least 2011 to 2013, and then giving them to the Trustee, admitted to occurring in numerous emails to Plaintiff and Arthur's attorney Counsel Prihoda, and as supported by Larry's sworn affidavit.

13. To date, the confidential statements and related documents, numbering in the thousands and belonging someone other than Defendants or whomever now possesses them, have not been located, and Defendants are alleged to have

knowledge and active fault with regard thereto.

III. **COUNTS**

Plaintiff presents the following State claim by way of pendant jurisdiction, and presents same as it is a basis for part of the claims related to Defendants' simultaneous interference with the U.S. Mails, Plaintiff's Custodial duties, and Plaintiff's and Arthur's rights as a beneficiary.

**COUNT 1**

**CIVIL CONSPIRACY/RICO**

**18 USC 1961 et seq.**

14. Paragraphs 1-12 are incorporated herein.

15. 18 USC 1701 provides:

"Obstruction of mails generally. Whoever knowingly and willfully obstructs or retards the passage of the mail, or any carrier or conveyance carrying the mail, shall be fined under this title or imprisoned not more than six months, or both.".

16. 18 U.S. Code § 1702 provides:

"Obstruction of correspondence. Whoever takes any letter, postal card, or package out of any post office or any authorized depository for mail matter, or from any letter or mail carrier, or which has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, *or to pry into the business or secrets of another, or opens, secretes, embezzles, or destroys the same*, shall be fined under this title or imprisoned not more than five years, or both.".

17. 18 U.S. Code § 1708 provides:

"Theft or receipt of stolen mail matter generally. \

Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; or

Whoever steals, takes, or abstracts, or by fraud or deception obtains any letter, postal card, package, bag, or mail, or any article or thing contained therein which has been left for collection upon or adjacent to a collection box or other authorized depository of mail matter; or

Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—

Shall be fined under this title or imprisoned not more than five years, or both.

18. 18 U.S. Code § 1341 provides:

"Frauds and swindles. *Whoever, having devised or intending to devise any scheme or artifice to defraud*, *or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises*, or to ...procure for unlawful use any...obligation, security, or other article, ...for the purpose of executing such scheme or artifice or attempting so to do, *places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service*...*or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon,*

*or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing,* shall be fined under this title or imprisoned not more than 20 years, or both. *(Emphasis Added).*

19. 18 U.S. Code § 1952 provides:

"Interstate and foreign travel or transportation in aid of racketeering enterprises.

*(a) Whoever* travels in interstate or foreign commerce or *uses the mail* or any facility in interstate or foreign commerce, *with intent to—*

*(3) otherwise* promote, manage, establish, carry on, or *facilitate the promotion, management, establishment, or carrying on, of any unlawful activity*, and thereafter performs or attempts to perform—(A) an act described in paragraph...(3) shall be fined under this title, imprisoned not more than 5 years, or both;

20. 18 USC 1961 provides, inter alia:

(1) "racketeering activity" means...(B) any act which is indictable under any of the following provisions of title 18, United States Code: ...section 1341 (relating to mail fraud)...section 1952 (relating to racketeering)"

(3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property;

(4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;

21. 18 USC 1962 provides:

"Prohibited activities.

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce...

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section

22. At all relevant times, Defendants and the unsued coconspirators named herein, were and are "whoever" under 18 USC 1341, 1701, 1702, 1708, and 1952, as defined therein.

23. At all relevant times, Defendants, and fellow Californians The Weseinthals, The (defunct) WJK Law Firm, and (disbarred) King, each was a "person" and an "enterprise" pursuant to 18 USC § 1961(3) and (4), and under California and Illinois law, whom were related by way of and

1  engaged in a common scheme to control and deny Plaintiff, beneficiary,
2  and the Custodial accounts, as well as to cover that up.
3
4  24.  Plaintiff and Arthur Gomez, and his accounts and the Custody thereof,
5       were and are also both "persons" and "enterprises" as defined under 18
6       UCS 1961(3) and 1961(4), over whom Defendants and others engaged in a
7       common scheme and pattern of conduct intended, designed and
8       implemented, individually but for a common purpose (tacit or
9       serendipitous) to attempt to control and acquire control over Plaintiff and
10      the deny access to accounts belonging to Arthur, by illegal and prohibited
11      means.
12
13 25.  Plaintiff alleges that the conduct the Defendants engaged in alleged
14      herein, tortious misuse, diversion, mis-sending and/or theft of the mails,
15      and their respective activities in covering that up, and interfering with
16      Plaintiff's duty to safekeep, maintain and transfer the Schwab accounts to
17      his Beneficiary Arthur, affected interstate and foreign commerce, as that
18      term is understood and law and pursuant to 18 USC § 1962, and thus
19      comprised prohibited "racketeering activity" by each and all, falling under
20      and violating RICO.
21
22 26.  Each Defendant is alleged to have knowingly misused USPS mailings,
23      directing, aiding, abetting or otherwise assisting in the knowing sending at
24      least 192 separate confidential statements to a deceased person whom by
25      law cannot be a "custodian" as stated on each of the 192 labels of the
26      known mailings,  to an address that had been sold as a matter of record

1  since 2014, in furtherance of independent yet related schemes to gain
2  control over the accounts and/or extort releases, and to attempt to cover
3  up the malfeasance and misfeasance related to the UTMA and IRA.

27. This pattern of mis-directed mis-accepted mails occurred over a period of several years from the date of Dr. Gomez passing (7.04.11) to date, constitutes, *inter alia*, hornbook mail fraud, and thus rises to the level of a pattern of racketeering activity in violation of 18 USC 1962.

28. As detailed above, each of the Defendants and unsued entities discussed herein are alleged to have agreed amongst themselves to attempt to and to participate, and/or to have cooperated tacitly or overtly, by attempting and participating, with tacit or blatant agreement or otherwise, in a scheme or schemes, to control and/or extort Plaintiff and his Res and Beneficiary, and also to cover up and perpetrate prior malfeasance, including by way of mail fraud as alleged herein.

29. Plaintiff asserts claims against all defendants for conspiring to violate Plaintiff's Custodial and personal legal rights, as well as violating 18 USC § 1962, by attempting to gain control, gaining control of, and participating in the affairs of an enterprise (Plaintiff) through a pattern of racketeering activity.

30. The defendants' conspiracy to violate § 1962(c) is a violation of § 1962(d).

31. The use of mails for improper purpose is mail fraud under 18 USC 1341,

and Plaintiff alleges that each defendant's subject communications controverting undersigned's authority and/or attempting to extort or impugn undersigned were made in violation of the mail fraud and statutes cited herein.

32. Plaintiff alleges he and his beneficiary were enterprises which were attempted to be defrauded by Defendants' participation in diverting years of mails, on more than two occasions, and by two or more acts of unsued entities for the common purpose of control, profit and avoiding liability through illegal means.

33. As a result of the above-described racketeering activity, plaintiff and his beneficiary have been collectively proximately damaged in their rights and property in an amount of no less than $1,000,000.00

34. Pursuant to § 1964(c), plaintiff is entitled to recover threefold damages plus costs and attorneys' fees from the "RICO defendants", and pursuant to § 1964(a), the plaintiffs are entitled to appropriate injunctive relief to prevent and to restrain future RICO violations, WHEREFORE injunctive relief restraining Defendants is requested and damages are prayed for in an amount of 3 times the damages assessed, with fees and costs.

**COUNT 2**
**VIOLATION OF ILLINOIS UNIFORM GIFT TO MINOR'S ACT**
**INTERFERENCE WITH CUSTODIAL DUTIES**
**760 ILCS 20/ et seq.**

35. Paragraphs 1-12 are incorporated herein by reference.

36. 760 ILCS 20/13, provides:

   "Sec. 13. Care of Custodial Property.

   (a) A custodian shall:

   (1) take control of custodial property;
   (2) register or record title to custodial property if appropriate; and
   (3) collect, hold, manage, invest, and reinvest custodial property.

   (b) The custodian, notwithstanding statutes restricting investments by fiduciaries, shall invest and reinvest the custodial property as would a prudent person of discretion and intelligence who is seeking a reasonable income and the preservation of his capital, including without limitation in one or more common trust funds as defined in and from time to time established, maintained and administered pursuant to "An Act concerning common trust funds", approved July 29, 1943, as now or hereafter amended, except that he may, in his discretion and without liability to the minor or his estate, retain custodial property given to the minor in a manner prescribed in this Act or hold money so given in an account in the financial institution to which it was paid or delivered by the transferor…

   …(e) A custodian shall keep records of all transactions with respect to custodial property, including information necessary for the preparation of the minor's tax returns, and shall make them available for inspection at reasonable intervals by a parent or representative of the minor or by the minor if the minor has attained the age of 14 years.  (Source: P.A. 84-1129.)"

37. 760 ILCS 20/14 provides:

   "Sec. 14. Powers of Custodian.

   (a) A custodian, acting in a custodial capacity, has all the rights, powers, and authority over custodial property that unmarried adult owners have over their own property…

38.  760 ILCS 20/17, provides in relevant part:

   "Exemption of Third Person from Liability. A third person in good faith and without court order may act on the instructions of or otherwise deal with any

person purporting to make a transfer or purporting to act in the capacity of a custodian and, in the absence of knowledge, is not responsible for determining:

(1) the validity of the purported custodian's designation;

(2) the propriety of, or the authority under this Act for, any act of the purported custodian;

(3) the validity or propriety under this Act of any instrument or instructions executed or given either by the person purporting to make a transfer or by the purported custodian; or

(4) the propriety of the application of any property of the minor delivered to the purported custodian.

39. 760 ILCS 20/21 provides in relevant part:

"Sec. 21. Termination of Custodianship.

(a) The custodian shall transfer in an appropriate manner the custodial property (to the extent that it has not been used pursuant to this Act) to the minor or to the minor's estate upon the earlier of:

1) the minor's attainment of 21 years of age with respect to custodial property transferred under Section 5 or 6;

(2) the minor's attainment of majority under the laws of this State other than this Act with respect to custodial property transferred under Section 7 or 8; or

(3) the minor's death.

40. Under 760 ILCS 20, at all times relevant hereto subsequent to 7.4.11, Illinois resident Felipe Gomez, was at all times Custodian of Schwab inherited IRA xxxx-4115 and UTMA 7542 until delivery, for the benefit of Arthur Gomez, having been appointed Custodian by Dr. Gomez for Arthur Gomez on or around

1    1.02.09, whose duties to assure complete transfer and address and recover for waste to the res continue.

41.  Plaintiff alleges that Defendants part in sending, and the accepting, diverting and/or misdirecting the Schwab mails, and then the attempted cover up, for both xxxx-7542 and xxxx-4115, be it negligent or intentional, when they knew that Plaintiff was Custodian for such accounts, directly and intentionally interfered with undersigned's duties under law as to beneficiary Arthur and the accounts, such results inuring to have prevented Plaintiff's execution of 760 ILCS 20/13 and 20/14 to date, and constituted and constitutes violations of 760 ILCS 20/ and other laws which Plaintiff reserves the right to amend to add after further investigation.

42.  Plaintiff alleges Defendants' conduct in assisting in mailing confidential statements to a deceased person at an address known to belong to someone else was a proximate and direct result of Schwab misdirecting mails to a deceased person whom cannot be a Custodian, and directly interfered with Plaintiff's duties at the cost of missed tax obligations and over $250,000 and fees and costs, with both Plaintiff and beneficiary Arthur being thereby exposed to liability at no fault of their own, with the profit and gain of Defendants and others associated as motive.

43.  Defendants, and whomever was taking the mails at 1645 Sonata addressed to Dr. Gomez, as a group, collectively ignored and continue to ignore the authority of undersigned as duly appointed custodian of the UTMA on behalf of Arthur, and actively worked individually and as a group for independent and common malicious and illegal purposes to subvert same, to the financial and constitutional detriment of the common beneficiary of both Plaintiff and Defendants as well as to Plaintiff, thus knowingly interfering with and preventing Plaintiff's duties to transfer the res as required under 760 ILCS 20/21(a), causing irreparable harm, injury and damages to

Plaintiff and his beneficiary.

44. WHEREFORE, PLAINTIFF prays this court enter a finding that such conduct is in direct contradiction to Illinois law and undersigned's rights thereunder as UTMA Custodian, to wit 760 ILCS 20/ et seq., and the provisions cited above, and Plaintiff moves this Court to enter an Order requiring Defendants to:

A) cease and desist interfering with the mailings related to the two accounts, Plaintiff or beneficiary Arthur Gomez;

B) immediately disclose to Plaintiff or Arthur's current tax and estate attorney Virginia Prihoda, all information in their possession as to the two accounts without awaiting discovery;

C) cooperate with Plaintiff and this Court in concluding Plaintiff's Custodianship, including immediately determining how and why confidential mails were sent for 2 accounts for 8 years to a known bad address;

D) pay damages of at least $1,250,000, and attorneys fees and costs to Plaintiff for such violations and interference.

Submitted By: s/ *Felipe Gomez, Pro Se,*

Date: 1.24.22

Felipe Gomez, Pro Se
1922 W. Belmont Ave 1F
Chicago, IL 60657
312.509.2071
t312.509.2071@gmail.com

16