**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| **Felipe Nery Gomez** | **Case No: 22-cv-0576** |
| --- | --- |
| **v.**<br><br>**Charles Schwab & Co. Inc.**<br>**Garrett Wynne**<br>**Vincent Trace Schmeltz** | **18 USC 1961 et seq.**<br>**(RICO-Mail Fraud/Theft, Civil Conspiracy)**<br><br>**760 ILCS 20/ Illinois UTMA**<br><br><br>**Ad Danum: $1,250,000+** |

**FIRST AMENDED COMPLAINT**

**(As a Matter of Course Per FRCP 15(a)(1)(B))**

NOW COMES FELIPE GOMEZ, in Equity and at Law, and files this First Amended Complaint grieving as to Defendants, and stating in support:

**I. Parties and Subject Matter**

**A.        Plaintiff**

1.    **Plaintiff Felipe Gomez** was and is at all times relevant hereto, an Illinois resident, whom was appointed, and agreed with Testator Sandra Gomez to be Illinois Custodian of a Schwab UTMA (xxxx7542) and a Schwab IRA (xxxx4115), for the benefit of then and at all times Illinois resident Arthur Gomez, whose custodial duties were directly interfered with by Defendants, such duties running until the age of termination, 21 in Illinois, and Gomez still being

1

exposed to possible actions by Arthur as a direct and proximate result of Defendant's individual as well as concerted actions in hiding the res from Plaintiff, including by way of intentionally omitting Plaintiff's name from over 190 mailings, each of which was unique and the absence of each creating a distinct, new, joint and severable injury to both Custodian and Beneficiary, that should have been sent to and received by Plaintiff, from 7.4.11 until early 2.1.20, as to both the IRA and UTMA at issue, where Schwab had the correct address, and in any event the mail was intentionally addressed to a dead person, not merely sent to the wrong address by accident.

2.     Plaintiff Gomez also sues in his former professional capacity, as he was lied to as part of his law practice and custodianship as attorney agent for Arthur, and also in his personal capacity, for redress of the lies and malfeasance directed at Plaintiff by Defendants here.

3.     Plaintiff also sues as a former custodian exposed to claims from Arthur, for the acts and omissions of Defendants, each of the four status being pleaded in the alternative, or collectively, thereunder, as may apply.

**B. Diverted Mail/Failure to Cease and Desist**

4.     The **diverted mails** were NOT generic repetitive versions of the same form, but each mailing was unique.  For example, each of the 9 years of successive monthly statements was unique, reflecting updated interests and stock values, containing unique information of value only if transmitted to the Custodian, not Arthur, in timely and correct fashion.

5.     **Diverted mails** also included unique proxy vote notices from the various

2

1    companies the accounts were invested in, notifying the Custodian of his

2    beneficiary's right to vote as a stockholder, which vote could not be exercised

3    by Arthur, but rather only by Plaintiff, which votes and other stockholder rights

4    were directly denied to Plaintiff by Schwab's diversion, and such denial was

5    continued by its named attorney's failure to correct that diversion until well after

6    the 2019 interpleaders were filed, as well as other related torts and breaches

7    related thereto, tolling any statute of limitations until at the earliest, February

8    2022, when the statements finally began coming to the correct addressee,

9    although to this date they are still not correctly addressed.

10

11    **C. Defendants**

12  6.    **Defendant Schwab** allegedly, *inter alia*, and at issue here, in concert with

13    others, diverted or participated in the diversion of undesigned's and

14    Arthur Gomez's mails starting in 2011 and continuing to late 2020 or early

15    2021, and also did and continue to endeavor to cover up that

16    malfeasance, to date, including the filing of false lawsuits, including

17    *Schwab v Gomez,19cv3833 (NDILL),* an interpleader action (wherein

18    there can be no compulsory counter-claims given the plaintiff must be

19    neutral to invoke interpleader).

20

21  7.    Defendant Garrett Wynne is an attorney in the direct employ of Charles Schwab

22    Corporation whom, on information and belief, is currently residing in California

23    working for a corporation doing business in Illinois, and whom, on information

24    and belief, personally knowingly engaged in and continued the criminal

25    enterprise complained of herein, after Cease and Desist, including requesting

26    verification of the Plaintiff and undersigned as Attorney and Custodian for

27    Plaintiff (which was immediately and duly provided including dated signatures

in blue ink, and copies of state identidications cards, Plaintiff's social security card, and undersigned's 2018 license (2019 applied for), and then refusing to honor same once produced, hanging up the phone on both the legal Custodian (undersigned) and the Custodian's legal counsel/Administrator of the account, and other prior acts of deception and subterfuge to hide the assets, in violation of, *inter alia*, UGTMA and RICO.

8. Vincent Trace Schmeltz is an attorney in the employ of Charles Schwab Corporation whom, on information and belief, is currently residing in Illinois, representing a corporation doing business in Illinois, and whom, on information and belief, personally knowingly engaged in and continued the criminal enterprise complained of herein, after Cease and Desist, including requesting verification of the Plaintiff and undersigned as Attorney and Custodian for Plaintiff (which was immediately and duly provided including dated signatures in blue ink, and copies of state identidications cards, Plaintiff's social security card, and undersigned's 2018 license (2019 applied for), and then refusing to honor same once produced, and accusing Plaintiff of attempting to steal Arthur's assets despite Plaintiff being legal custodian, including suing Plaintiff alleging same with no basis, in an interpleader where there can be no counter-claims, and refusing to recognize Plaintiff as attorney for Arthur and the legal Custodian of the accounts, as well as refusing to recognize Plaintiff's agent Prihoda, and other prior acts of deception and subterfuge to hide the assets, in violation of, *inter alia*, UGTMA and RICO.

## II.    **FACTS**

9. Defendant Charles Schwab Corporation is a California corporation, engaging, among other services and products, in the sale and servicing of

4

1            trust funds, including Uniform Gift to Minors Act Custodial accounts, in

2            exchange for servicing and other related fees.

3

4   10.     Plaintiff is an Illinois resident, whose beneficiary and client, Arthur, was

5            the beneficiary of trust accounts from his maternal grandmother, Dr.

6            Sandra W. Gomez, in the form of an UGTM Act Trust, and a later

7            discovered IRA, that Dr. Gomez set up for Plaintiff in, on information and

8            belief, 2009 by way of her longstanding relationship with Defendant,

9            naming undersigned Felipe Gomez, as Custodian. *Exhibit 1 - 6.19.07*

10          *Email Chain SWG/Undersigned, Exh. 2 - 1.02.09 Schwab Designation of*

11          *Custodian, and Exh. 3 7.21.09 Schwab IRA Beneficiary Form.*

12

13   11.     In entering into the fiduciary contract with Schwab, Dr. Gomez did not

14           hyphenate Plaintiff's second middle name to his last, and his last name

15           has not officially ever been and is not Muellman-Gomez. *Exh. 3 at 2.*

16

17   12.     Beginning in February 2009, Schwab sent 1099s (except for TY 2010,

18           which is missing from the Lundy production discussed below) and other

19           documents, to Dr. Gomez's San Marcos residence address, misnomering

20           same for unexplained reason by changing Plaintiff's true last name as

21           listed and directed by Dr. Gomez, electing to merge the second middle

22           and last names with a hyphen. *Exh. 4 - 2.9.09 IRS Form 1099 Schwab*

23          *Mailing Cover.*

24

25   13.     On July 14, 2011, upon Dr. Gomez's passing, Custodian Felipe Gomez duly

26           executed and submitted notice of death and paperwork requested an

1      forwarded by Schwab, including that intended to address Plaintiff's UGTA

2      account, and which cover letter and application spelled Plaintiff's name

3      correctly, and which did not include the San Marcos address in requesting

4      that Schwab respond (which it did not), Gomez at this time not realizing

5      that there were in fact two accounts. *Exh. 5 - 7.14.11 Cover Letter and*

6      *Death Certificate.*

7

8  14.    Between 2011 and 2015, undersigned repeated the above process at least

9      twice, submitted forms identifying and verifying himself as Custodian, and

10     on several occasions verbally provided Schwab current addresses, other

11     than the San Marcos address, for mailing of documents and 1099s.

12

13  15.   On 10.30.15, undersigned executed and submitted to Schwab, a Power of

14     Attorney, as Custodian, appointing Attorney Virginia Prihoda as POA for

15     himself over Plaintiff's account (as well as for a Comerica account of

16     Plaintiff's which Comerica honored without question), again noting that

17     the hyphen was wrong and providing updated contact addresses. *Exh. 6 -*

18     *10.30.15 FG POA 2.*

19

20  16.   Despite the multiple verifications and requests, and unknown to Gomez

21     until the Lundy production of 3.30.18, Schwab continued to mail

22     confidential documents related to the UTMA to the San Marcos address,

23     and, after repeated attempts to get Schwab to honor the Custodian, the

24     Custodian again wrote to Schwab, giving current contact information, and

25     eviscerating any claim by Schwab it was mailing the statements to the

26     "address on file", as the San Marcos propery was NOT the address on file.

1     *Exh. 7 - 12.8.17 POA 3 Cover Letter.*

2

3     17.   Despite the numerous attempts to get Schwab to update the contact

4           information, the 3.30.18 Lundy production indicates that Defendant

5           Schwab continued its malfeasance afterward, using the wrong address

6           and wrong hyphenated name until well into 2018 for the IRA, until it was

7           transferred to ETrade.  *Exh. 8 - Misaddressed Schwab Communications*

8           *Post Notice.*

9

10    18.   Contact was finally made only through email, first in February 2018 with a staffer

11          who again required and was provided "verification", and substantively with an

12          attorney for Schwab working under Defendant Wynne, Rachel Lundy.

13

14    19.   On 3.29.18, undersigned finally got through, and after verifying for the

15          umpteenth time, on 3.30.18 Lundy provided a partial but substantial portion of

16          the requested file (some of which are attached hereto, after redaction, as can

17          be seen by the word "confidential" and Bates stamp, placed by Schwab, at the

18          bottom), password protected as confidential.  *Exh. 9 - E-mails with Lundy.*

19

20    20.   The Lundy production of 3.30.18 was the first time Plaintiff was aware of the fact

21          that Schwab was mailing statements, proxy and other confidential information

22          to Plaintiff's deceased mother at her sold address, despite the same production

23          containing the documents submitted by Plaintiff, including Dr. Gomez's death

24          certificate, and thus this action was filed withing the RICO 4 year SOL (and

25          conspiracy and torts to property have a 5 year SOL in Illinois in any event).

26

27    21.   Despite what was thought to be breakthrough, for as of yet unknown reasons

Schwab reverted to repeatedly verifying, and refused to cooperate or release the account, culminating in Defendant Wynne finally taking over and attempting Schwab's version of damage control, which was requiring Counsel Proihoda to again verify Plaintiff and undersigned, and then hanging up on Ms. Prihoda and instructing her not to call and to tell her clients, undersigned and Plaintiff, not to call either.   *Exh. 10 - Prihoda Letter of Representation and Umpteenth Custodial/Beneficiary Verification.*

22.   Defendant Wynne also reportedly threatened Counsel Prihoda with retaliation related to his assertion to her that all calls with Schwab were recorded (there is no such warning when one calls in, only that they may be monitored for quality assurance, not legal purposes including impeachment of one's own client in defense against a valid claim by same).   *Exh. 11 - Prihoda Affidavit.*

23.   Wynne also allegedly threatened that recordings of undersigned, Plaintiff, and/or Counsel Prihoda would be used offensively or defensively by Schwab/Wynne, despite Counsel Prihoda immediately indicating that Illinois is a mutual consent state and it was illegal to do what Wynne claims he did, here, despite California laws on the same (Wynne used a Denver cell phone to call undersigned and Counsel Prihoda and same to take calls, thus knowingly avoiding the same system relied on for his threats).

24.   Wynne stated to Prihoda that Schwab had not assets of Arthur's having transferred the UTMA to Etrade on or about 1.15.19, which was a lie, allegedly a knowing one, as at that moment Schwab in fact did have a second account, that was not revealed to Plaintiff or Arthur until a check was received from Schwab despite Wynne attesting his client had no funds.   *Exh. 12 - 3.10.19 Arthur Gomez Affidavit at Attachment A.*

8

25.   The 3.4.19 check from the IRA is the first knowledge of Schwab's possession of
      a second account, tolling any limitations related to the malfeasance and
      omissions as to the UTMA, and again making the instant matter well within the
      RICO 4 year limitations period, should this date be determined to be the last
      tolling of same, where Plaintiff alleges the malfeasance of incorrect mailing
      continued until February of 2020, and that the overall torts, breaches and
      offenses are continuing to this day, including by way of numerous material
      misrepresentations made in Schwab's motion to dismiss (to be addressed in
      due course).

26.   The Lundy production makes clear that from 2011 to at least the date of
      production, 3.30.18 , Schwab mailed confidential information and monthly
      statements, addressed to the "Custodian" for the UTMA account to 1645 Sonata
      Lane, San Marcos, CA., which, were admittedly collected from that mailbox  by
      Larry Weisenthal, in knowing or constructive concert with Defendant and
      spouse/Trustee Connie Weisenthal, with or without the direction or knowledge
      or of The SWG Living Trust Attorneys, despite Schwab having first hand personal
      knowledge that Plaintiff was Custodian as of 7.4.11, despite the Sonata Lane
      property being sold in 2014 as attorney for The Sandra W. Gomez Living Trust.
      *Exh. 13 - Weisenthal Affidavit.*

27.   In 2020, Plaintiff finally managed to correct the incorrect address used and on
      3.4.20, Her Honor Chief Judge Pallmeyer, in *Schwab v Gomez, 19cv0827, N.D.*
      *Illinois*, declared the IRA assets to belong to Arthur (with no findings as to
      Plaintiff other than Plaintiff agreed with Her Honor that the account belonged to
      Arthur, and that undersigned never claimed otherwise).

28.   In the interim, Plaintiff was unaware of the IRA account, and Defendants failed

1    to inform Plaintiff as to its status, rendering Plaintiff unable to calculate or

2    payout the yearly RMD for xxxx-4115, and unable to protect the Res from**, *inter***

3    *alia*, any tax consequences and penalties that may have or could accrue due to

4    the RMD failures.

5

6    29.    Plaintiff's and Arthur's Counsel, Virginia Prihoda, was also lied to by Defendant

7    Wynne, whom, on information and belief in concert with Defendant Schmeltz,

8    contrived to inform that Schwab had no assets of Arthur's, when it still had the

9    IRA, and Defendant Schmeltz has continued that deception, and the deflection

10    that was *Schwab v Gomez*, *19cv3833*, which falsely claims Plaintiff was trying to

11    claim an account that was unknown to and being hidden from Plaintiff.

12

13    30.    In the interim, Plaintiff also has incurred over $250,000 in unpaid professional

14    and attorney fees (not counting Plaintiff's own), including fees owed to Attorney

15    Prihoda, and was forced to not prosecute other paying cases, due to

16    Defendants' and others intentional use of the mails to propagate business for

17    themselves, and the Courts to try to cover it up, continuing to date.

18

19    31.    Specifically, Plaintiff previously alleged that Defendant Schwab mailed, with the

20    first and second set of trustees collecting, all or a portion of the at least 192

21    monthly confidential statement mailings, without authority, and on information

22    and belief, Wynne and then Schmeltz either personally directed Schwab, or

23    allowed Schwab, to continue the mailings and/or the residents of 1645 Sonata

24    to continue to accept same, and/or submitted a series of forwardings, and.or

25    otherwise arranged or helped arrange the diversion, and in any event

26    Defendants and the Trustees  have personal knowledge as to why, *inter alia*,

27    Schwab sent at least 192 mailings for nearly a decade  to a deceased

28    "custodian" at a bad address, of which Defendants are alleged to have an active

1    part in, including actively lying to Plaintiff and his agents.

2

3    32.    Specifically, early this year, Cooperator Larry Weisenthal admitted to collecting

4           Arthur's mails from at least 2011 to 2013, and then giving them to the Trustee,

5           admitted to occurring in numerous emails to Plaintiff and Arthur's attorney

6           Counsel Prihoda, and as supported by Larry's sworn  affidavit, this being the

7           date Plaintiff in fact confirmed Schwab's misdirection by a recipient as far as

8           statute of limitations purposes, the addressee being deceased and not able to

9           verify that she received the mails. *Exh. 13 - Weisenthal Affidavit.*

10

11   33.    To date, the confidential statements, proxy vote notices, year end tax

12          statements, IRS Form 5498 or equivalent information, and related documents,

13          EACH ONE BEING UNIQUE, and numbering in the thousands and belonging to

14          Plaintiff by law at the time if issuance, rendering the violations and offenses

15          continuing in nature, and thus tolling all applicable statute of limitations until

16          Plaintiff's property at the time of issuance and as it exists to date, is returned to

17          Plaintiff, extending Schwab's limitations period by way of Schwab's contribution

18          to the ongoing harm.

19

20   34.    Defendants are alleged to individually and collectively have knowledge and

21          active fault with regard to creating the situation where mail, that should have

22          Plaintiff's, not Arthur's, name as addressee is still unlocated, such knowing

23          diversion by Schwab, and the assists in furthering that diversion as well as

24          hiding the IRA from Plaintiff, resulting in each Defendant being responsible for

25          and liable for the distraint of personal property regardless of whom possesses

26          same, and being damages in and of itself, beyond and in addition to monetary

27          damages, which by way of Plaintiff's attorney's fees owed to Counsel Prihoda,

28          alone, solely as a result of the malfeasance of Schwab, with assists from Wynne

by of his deception of Prihoda, and then by Schmeltz by way of filing a bogus interpleader and to this day attempting to cover up Schwab's malfeasance and omissions, are in excess of $75,000.

## HARM COMMON TO ALL COUNTS

35.  Defendants acts and omissions are alleged to have harmed Plaintiff by way of, *inter alia,* directly interfering with Plaintiff's Custodial duties, including causing Plaintiff to not file yearly IRS statements and take the required yearly RMD, exposing Plaintiff to liability to both Arthur and the IRS, and such IRS requirements remaining unfulfilled by Plaintiff to this date, with significant risk of IRS penalties that can be alleged to be a result of Plaintiff's inability to comply with his Custodial and IRS duties.

36.  Plaintiff alleges damages in the way of in excess of $75,000 in attorney fees owed to Counsel Prihoda for her representation dating back to 2015 in relation to the Custodianship and accounts, as well as $91,000 in fees awarded to Etrade against Gomez in relation to the first (bogus) interpleader *Etrade v Gomez, 19cv0827 (NDILL)*, in Cook County matter *Gomez v Etrade, 20CH6873*, as well as exposure to his beneficiary for not being able to timely place the accounts in Arthur's hands, such harm continuing to this very writing which would not be occurring but for Defendant's acts and omissions related to Plaintiff's mail and custodianship.

III.  **COUNTS**

**COUNT 1**

**Breach of Fiduciary Duty**

**(5 yr SOL)**

37.  Plaintiff incorporates paragraphs 1-37 above.

38.  Plaintiff alleges that as Custodian of the IRA and UTMA, Defendant Schwab, as well as its agents, had a fiduciary duty to both Plaintiff, and Plaintiff's client and beneficiary, Arthur, as to the accounts, including the duty to provide all required documents to Plaintiff as Custodian, during the time it administered the accounts, as well as to be forthcoming and have its agents do the same.

39.  Plaintiff alleges that the fiduciary duty was breached by way of, *inter alia*, the intentional misdirection by Schwab, and assistance in that by Wynne and Schmeltz by way of their allowing their client to continue the offense even after being sued, of Plaintiff's mails to a deceased person as "custodian" to an address that was of record not resided in by the decedent, and that such breach continued at least until Schwab transferred the second (IRA) account in 2021, and in fact continues as to the IRS and the need for IRS to get an explanation for why the RMDs were not taken and the filings were not made by Plaintiff.

39.  Plaintiff alleges that such breach proximately caused injury to Plaintiff, including but not limited to directly interfering with Plaintiff's Custodial duties, including causing Plaintiff to not file yearly IRS statements and take

13

1   the required yearly RMD, exposing Plaintiff to liability to both Arthur and

2   the IRS, and such IRS requirements remaining unfulfilled by Plaintiff to

3   this date, with significant risk of IRS penalties that can be alleged to be a

4   result of Plaintiff's inability to comply with his Custodial and IRS duties.

5

6   40.   Plaintiff alleges Defendants acts and omissions directly caused Plaintiff

7   damages in the way of in excess of $75,000 in attorney fees owed to

8   Counsel Prihoda, as well as $91,000 in fees awarded to Etrade against

9   Gomez in relation to the first (bogus) interpleader *Etrade v Gomez,*

10  *19cv0827 (NDILL)*, in Cook County matter *Gomez v Etrade, 20CH6873*, as

11  well as exposure to his beneficiary for not being able to timely place the

12  accounts in Arthur's hands, such harm continuing to this very writing

13  which would not be occurring but for Defendant's acts and omissions

14  related to Plaintiff's mail and custodianship.

15

16  41.   **WHEREFORE,** Plaintiff prays the Court find the Schwab repeatedly and

17  knowingly breached its fiduciary duty to Plaintiff, and award Plaintiff

18  monetary damages in an amount of no less than $91,000, plus the amount

19  of Counsel Prihoda's fees attributable to Defendants' malfeasance, plus

20  pre and post judgment interest, plus punitive damages in the amount of

21  no less than 3 times the compensatory damages.

22              **COUNT 2**

23  **Illinois Fraud and Deceptive Business Practices Act**

24              (815 ILCS 505/1)

25

26  42.   Plaintiff incorporates paragraphs 1-37 above.

27

43.   Plaintiff alleges that Schwab's knowing mailing of Plaintiff's mail to
      another, assisted by Wynne and Schmeltz in extending that conduct, was
      and is a deceptive act or practice by Defendants, in the course of trade
      and commerce.

44.   Plaintiff also alleges as a deceptive act or practice Schwab's failure to
      inform Plaintiff of the true status of the accounts, assisted by Defendants
      whom also each knew the true status, including the existence of the IRA,
      the deception including stating to Plaintiff and his representatives,
      including through Wynne to Plaintiff's agent Pridoda, that there was no
      IRA at Schwab.

45.   Defendants intended Plaintiff rely on the deception, and in fact Plaintiff
      did until the check attached to Exhibit 12 hereto was received on or about
      3.8.19.

46.   Defendants deceptions caused  actual damage to the plaintiff as a result
      of the defendant's violation of the act, including causing Plaintiff to breach
      his duties as Custodian, and financial expenditures and debt in excess of
      $160,000, as described in the "harm common to all counts" section above,
      which harm continues to this date as Plaintiff's mail is still missing, and
      custodial duties, and ending of the ongoing harm, cannot be completed
      without same.

47.   **WHEREFORE,** Plaintiff prays the Court find the Defendants repeatedly and
      knowingly violated 810 ILCS 505/ et seq., as toward Plaintiff and award
      Plaintiff monetary damages in an amount of no less than $91,000, plus the
      amount of Counsel Prihoda's fees attributable to Defendants'
      malfeasance, plus pre and post judgment interest, plus punitive damages

1    in the amount of no less than 3 times the compensatory damages.

2

3                                    **COUNT 3**

4                         **FRAUDULENT CONCEALMENT**

5                      **(Common Law and 735 ILCS 5/13-215)**

6    48.   Plaintiff incorporates paragraphs 1-37 above.

7

8    49.   Plaintiff as Custodian was in a special relationship with Schwab and its

9          agents/co-   defendants, as fiduciary, causing Plaintiff to place trust in

10         Defendants, and triggering a duty for Defendants to disclose the details of the

11         accounts, as well as disclose any omissions on the part of Schwab relating to

12         same, including failure to report to IRS and failure to take yearly RMDs.

13

14   50.   Plaintiff and Defendants were not engaged in arms length transactions, with

15         Schwab's holding the accounts and concealment of the details and existence

16         thereof allowing Defendants to exert overwhelming influence over Plaintiff and

17         the res, placing Plaintiff at an extreme disadvantage as to being able to execute

18         Plaintiff's custodial and attorney duties toward his beneficiary/client.

19

20   51.   Plaintiff alleges that Defendants intentionally concealed material facts as to the

21         existence of the accounts to induce a false belief that the accounts were being

22         handled responsibly and according to law, which Plaintiff did so believe up until

23         3.30.18 as to the UTMA upon receiving the Lundy production, and until 3.4.19

24         when Plaintiff discovered that Schwab also had the IRA in its possession, both

25         within the 5 year SOL for this Count.

26

27   52.   **WHEREFORE,** Plaintiff prays the Court find the Defendants repeatedly and

28         knowingly engaged in fraudulent concealment, as well as violating 735

29         ILCS 5/13, as toward Plaintiff and award Plaintiff monetary damages in an

30         amount of no less than $91,000, plus the amount of Counsel Prihoda's

1     fees attributable to Defendants' malfeasance, plus pre and post judgment

2     interest, plus punitive damages in the amount of no less than 3 times the

3     compensatory damages.

4     **COUNT 4**

5     **CIVIL CONSPIRACY/RICO**

6     **18 USC 1961 et seq.**

7     53.    Plaintiff incorporates paragraphs 1-37 above.

8     54.    18 USC 1701 provides:

9     "Obstruction of mails generally. Whoever knowingly and willfully
10   obstructs or retards the passage of the mail, or any carrier or conveyance
11   carrying the mail, shall be fined under this title or imprisoned not more
12   than six months, or both.".
13

14   55.    18 U.S. Code § 1702 provides:

15   "Obstruction of correspondence. Whoever takes any letter, postal card, or
16   package out of any post office or any authorized depository for mail
17   matter, or from any letter or mail carrier, or which has been in any post
18   office or authorized depository, or in the custody of any letter or mail
19   carrier, before it has been delivered to the person to whom it was
20   directed, with design to obstruct the correspondence, *or to pry into the*
21   *business or secrets of another, or opens, secretes, embezzles, or destroys*
22   *the same*, shall be fined under this title or imprisoned not more than five
23   years, or both.".
24

25   56.    18 U.S. Code § 1708 provides:

26   "Theft or receipt of stolen mail matter generally.   \
27

28   Whoever steals, takes, or abstracts, or by fraud or deception obtains, or
29   attempts so to obtain, from or out of any mail, post office, or station
30   thereof, letter box, mail receptacle, or any mail route or other authorized
31   depository for mail matter, or from a letter or mail carrier, any letter,
32   postal card, package, bag, or mail, or abstracts or removes from any such
33   letter, package, bag, or mail, any article or thing contained therein, or
34   secretes, embezzles, or destroys any such letter, postal card, package,
35   bag, or mail, or any article or thing contained therein; or
36

37   Whoever steals, takes, or abstracts, or by fraud or deception obtains any

letter, postal card, package, bag, or mail, or any article or thing contained therein which has been left for collection upon or adjacent to a collection box or other authorized depository of mail matter; or

Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—

Shall be fined under this title or imprisoned not more than five years, or both.

57.    18 U.S. Code § 1341 provides:

"Frauds and swindles.  *Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises*, or to ...procure for unlawful use any...obligation, security, or other article, ...for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service...*or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing,* shall be fined under this title or imprisoned not more than 20 years, or both.  *(Emphasis Added).*

58.    18 U.S. Code § 1952 provides:

"Interstate and foreign travel or transportation in aid of racketeering enterprises.

*(a) Whoever* travels in interstate or foreign commerce or *uses the mail* or any facility in interstate or foreign commerce, *with intent to—*

*(3) otherwise* promote, manage, establish, carry on, or *facilitate the promotion, management, establishment, or carrying on, of any unlawful activity*, and thereafter performs or attempts to perform—(A) an act described in paragraph...(3) shall be fined under this title, imprisoned not more than 5 years, or both;

59.    18 USC 1961 provides, inter alia:

(1) "racketeering activity" means...(B) any act which is indictable under any of the following provisions of title 18, United States Code: ...section 1341 (relating to mail fraud)...section 1952 (relating to racketeering)"

(3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property;

(4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;

60.    18 USC 1962 provides:

"Prohibited activities.

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce...

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

1     (d) It shall be unlawful for any person to conspire to violate any of the
2     provisions of subsection (a), (b), or (c) of this section

3    61.   At all relevant times, Defendants and the unsued coconspirators named

4     herein, were and are "whoever" under 18 USC 1341, 1701, 1702,1708, and

5     1952, as defined therein.

6

7    62.   **Enterprise**: At all relevant times, Defendants, and fellow Californians The

8     Weisenthals, The (defunct) WJK Law Firm, and (disbarred) William King,

9     each was a "person" and an "enterprise" pursuant to 18 USC § 1961(3)

10     and (4), and under California and Illinois law, whom were related by way

11     of and engaged in a common scheme to control and deny Plaintiff,

12     beneficiary, and the Custodial accounts, as well as to cover that up.

13

14    63.   Plaintiff and Arthur Gomez, and his accounts and the Custody thereof,

15     were and are also both "persons" and "enterprises" as defined under 18

16     UCS 1961(3) and 1961(4), over whom Defendants and others engaged in a

17     common scheme and pattern of conduct intended, designed and

18     implemented, individually but for a common purpose (tacit or

19     serendipitous) to attempt to control and acquire control over Plaintiff and

20     the deny access to accounts belonging to Arthur, by illegal and prohibited

21     means.

22

23    64.   Plaintiff alleges that the conduct the Defendants engaged in alleged

24     herein, tortious misuse, diversion, mis-sending and/or theft of the mails,

25     and their respective activities in covering that up, and interfering with

26     Plaintiff's duty to safekeep, maintain and transfer the Schwab accounts to

27     his Beneficiary Arthur, affected interstate and foreign commerce, as that

28     term is understood and law and pursuant to 18 USC § 1962, and thus

29     comprised prohibited "racketeering activity" by each and all, falling under

30     and violating RICO.

65.   Each Defendant is alleged to have knowingly misused USPS mailings, directing, aiding, abetting or otherwise assisting in the knowing sending at least 192 separate, unique, confidential statements, as well as proxy notices for votes Plaintiff was unable to participate in, to a deceased person whom by law cannot be a "custodian" as stated on each of the more than 192 labels of the known mailings, to an address that had been sold as a matter of record since 2014, in furtherance of independent yet related schemes to gain control over the accounts and/or extort releases, and to attempt to cover up the malfeasance and misfeasance related to the UTMA and IRA.

66.   This pattern of mis-directed mis-accepted mails, and the actions of the attorneys in assisting that as well as covering up, occurred over a period of several years from the date of Dr. Gomez passing (7.04.11) to date (with the mail still being missing,  constitutes, *inter alia*, hornbook mail fraud, and thus rises to the level of a pattern of racketeering activity in violation of 18 USC 1962.

67.   As detailed above, each of the Defendants and unsued entities discussed herein are alleged to have agreed amongst themselves to attempt to and to participate, and/or to have cooperated tacitly or overtly, by attempting and participating, with tacit or blatant agreement or otherwise, in a scheme or schemes, to control and/or extort Plaintiff and his Res and Beneficiary, and also to cover up and perpetrate prior malfeasance, including by way of  mail fraud as alleged herein.

68.   Plaintiff asserts claims against all defendants for conspiring to violate Plaintiff's Custodial, Attorney-client, and personal legal rights, as well as violating 18 USC § 1962, by attempting to gain control, gaining control of,

1   and participating in the affairs of an enterprise (Plaintiff, as well as the
2   accounts) through a pattern of racketeering activity.

3

4   69.   The defendants' conspiracy to violate § 1962(c) is a violation of § 1962(d).

5

6   70.   The use of mails for improper purpose is mail fraud under 18 USC 1341,
7   and Plaintiff alleges that each defendant's subject communications
8   controverting undersigned's authority and/or attempting to extort or
9   impugn undersigned were made in violation of the mail fraud and
10   statutes cited herein.

11

12   71.   Plaintiff alleges he and his beneficiary were enterprises which were
13   attempted to be defrauded by Defendants' participation in diverting years
14   of mails, on more than two occasions, and by two or more acts of unsued
15   entities for the common purpose of control, profit and avoiding liability
16   through illegal means.

17

18   72.   As a result of the above-described racketeering activity, plaintiff and his
19   beneficiary have been collectively proximately damaged in their rights
20   and property  in an amount of no less than $1,000,000.00

21

22   73.   Pursuant to § 1964(c),  plaintiff is entitled to recover threefold damages
23   plus costs and attorneys' fees from the "RICO defendants", and pursuant
24   to § 1964(a), the plaintiffs are entitled to appropriate injunctive relief to
25   prevent and to restrain future RICO violations, WHEREFORE injunctive
26   relief restraining Defendants is requested and damages are prayed for in
27   an amount of 3 times the damages assessed, with fees and costs.

28

29

**COUNT 5**

**VIOLATION OF ILLINOIS UNIFORM GIFT TO MINOR'S ACT**

**INTERFERENCE WITH CUSTODIAL DUTIES**

**760 ILCS 20/ et seq.**

74.     Paragraphs 1-37 are incorporated herein by reference.

75.     760 ILCS 20/13, provides:

"Sec. 13. Care of Custodial Property.

(a) A custodian shall:

(1) take control of custodial property;
(2) register or record title to custodial property if appropriate; and
(3) collect, hold, manage, invest, and reinvest custodial property.

(b) The custodian, notwithstanding statutes restricting investments by fiduciaries, shall invest and reinvest the custodial property as would a prudent person of discretion and intelligence who is seeking a reasonable income and the preservation of his capital, including without limitation in one or more common trust funds as defined in and from time to time established, maintained and administered pursuant to "An Act concerning common trust funds", approved July 29, 1943, as now or hereafter amended, except that he may, in his discretion and without liability to the minor or his estate, retain custodial property given to the minor in a manner prescribed in this Act or hold money so given in an account in the financial institution to which it was paid or delivered by the transferor...

...(e) A custodian shall keep records of all transactions with respect to custodial property, including information necessary for the preparation of the minor's tax returns, and shall make them available for inspection at reasonable intervals by a parent or representative of the minor or by the minor if the minor has attained the age of 14 years.  (Source: P.A. 84-1129.)"

76.     760 ILCS 20/14 provides:

"Sec. 14. Powers of Custodian.

(a) A custodian, acting in a custodial capacity, has all the rights, powers, and authority over custodial property that unmarried adult owners have over their own property...

77.  760 ILCS 20/17, provides in relevant part:

"Exemption of Third Person from Liability. A third person in good faith and without court order may act on the instructions of or otherwise deal with any person purporting to make a transfer or purporting to act in the capacity of a custodian and, in the absence of knowledge, is not responsible for determining:

(1) the validity of the purported custodian's designation;

(2) the propriety of, or the authority under this Act for, any act of the purported custodian;

(3) the validity or propriety under this Act of any instrument or instructions executed or given either by the person purporting to make a transfer or by the purported custodian; or

(4) the propriety of the application of any property of the minor delivered to the purported custodian.

78.  760 ILCS 20/21 provides in relevant part:

"Sec. 21. Termination of Custodianship.

 (a) The custodian shall transfer in an appropriate manner the custodial property (to the extent that it has not been used pursuant to this Act) to the minor or to the minor's estate upon the earlier of:

     1) the minor's attainment of 21 years of age with respect to custodial property transferred under Section 5 or 6;

     (2) the minor's attainment of majority under the laws of this State other than this Act with respect to custodial property transferred under Section 7 or 8; or

     (3) the minor's death.

79.  Under 760 ILCS 20, at all times relevant hereto subsequent to 7.4.11,  Illinois resident Felipe Gomez, was at all times Custodian of Schwab inherited IRA xxxx-4115 and UTMA 7542 until delivery, for the benefit of Arthur Gomez, having been appointed Custodian by Dr. Gomez for Arthur Gomez on or around

1   1.02.09, whose duties to assure complete transfer and address and recover for

2   waste to the res continue.

3

4   80.    Plaintiff alleges that Defendants part in sending, and the accepting, diverting

5   and/or misdirecting the Schwab mails, and then the attempted cover up,  for

6   both xxxx-7542 and xxxx-4115, be it negligent or intentional, when they knew

7   that Plaintiff was Custodian for such accounts, directly and intentionally

8   interfered with undersigned's duties under law as to beneficiary Arthur and the

9   accounts, such results inuring to have prevented Plaintiff's execution of 760

10  ILCS 20/13 and 20/14 to date, and constituted and constitutes violations of 760

11  ILCS 20/ and other laws which Plaintiff reserves the right to amend to add after

12  further investigation.

13

14  81.    Plaintiff alleges Defendants' conduct in assisting in mailing confidential

15  statements to a deceased person at an address known to belong to someone

16  else was a proximate and direct result of Schwab misdirecting mails to a

17  deceased person whom cannot be a Custodian, and directly interfered with

18  Plaintiff's duties at the cost of missed tax obligations and over $250,000 and fees

19  and costs, with both Plaintiff and beneficiary Arthur being thereby exposed to

20  liability at no fault of their own, with the profit and gain of Defendants and

21  others associated as motive.

22

23  82.    Defendants, and whomever was taking the mails at 1645 Sonata addressed to

24  Dr. Gomez, as a group, collectively ignored and continue to ignore the authority

25  of undersigned as duly appointed custodian of the UTMA on behalf of

26  Arthur, and actively worked individually and as a group for independent

27  and common malicious and illegal purposes to subvert same, to the

28  financial and constitutional  detriment of the common beneficiary of both

29  Plaintiff and Defendants as well as to Plaintiff, thus knowingly interfering

30  with and preventing Plaintiff's duties to transfer the res as required under

31  760 ILCS 20/21(a), causing irreparable harm, injury and damages to

1   Plaintiff and his beneficiary.

2

3   83.   WHEREFORE, PLAINTIFF prays this court enter a finding that  such

4        conduct is in direct contradiction to Illinois law and undersigned's rights

5        thereunder as UTMA Custodian, to wit 760 ILCS 20/ et seq., and the

6        provisions cited above, and Plaintiff moves this Court to enter an Order

7        requiring Defendants to:

8        A)   cease and desist interfering with the mailings related to the two

9             accounts, Plaintiff or beneficiary Arthur Gomez;

10       B)   immediately disclose to Plaintiff or Arthur's current tax and estate

11            attorney Virginia Prihoda, all information in their possession as to

12            the two accounts without awaiting discovery;

13       C)   cooperate with Plaintiff and this Court in concluding Plaintiff's

14            Custodianship, including immediately determining how and why

15            confidential mails were sent for 2 accounts for 9 years to a known

16            bad address;

17       D)   pay damages of at least $1,250,000, and attorneys fees and costs to

18            Plaintiff for such violations and interference.

19   Submitted By: s/Felipe Gomez, Pro Se,

20   Date: 9.**6.22**

21   Felipe Gomez, Pro Se

22   1922 W. Belmont Ave 1F

23   Chicago, IL 60657

24   312.509.2071

25   t312.509.2071@gmail.com

1
2
3                          **INDEX TO EXHIBITS**
4

| Exh. # | Document/Title | Page |
|--------|----------------|------|
| 1 | *6.19.07 Email Chain SWG/Undersigned* | 1 |
| 2 | *1.02.09 Schwab Designation of Custodian* | 3 |
| 3 | *7.21.09 Schwab IRA Beneficiary Form* | 6 |
| 4 | *2.9.09 IRS Form 1099 Schwab Mailing Cover* | 12 |
| 5 | *7.14.11 Cover Letter and Death Certificate* (p18) | 14 |
| 6 | *10.30.15 Felipe Gomez Power of Attorney 2 for Prihoda* | 19 |
| 7 | *12.8.17 Power of Attorney 3 Cover Letter* | 24 |
| 8 | *Misaddressed Schwab Communications Post Notice* | 26 |
| 9 | *Lundy E-mails* (3.30.18 Schwab Partial Document Production at p39) | 32 |
| 10 | *Prihoda Letter of Rep and Custodial/Beneficiary Verification* | 42 |
| 11 | *9.6.22 Prihoda Affidavit* | 45 |
| 12 | *3.10.19 Arthur Gomez Affidavit (Unsolicited IRA Check at p56)* | 50 |
| 13 | *10.26.21 Larry Weisenthal Affidavit* | 59 |